UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN DOE, Individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SOUTHERN ILLINOIS HEALTHCARE ENTERPRISES, INC., SOUTHERN ILLINOIS HOSPITAL SERVICES, and SOUTHERN ILLINOIS MEDICAL SERVICES, NFP,<br><br>Defendants. | Case No. 3:23-cv-02717-GCS |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION AND BACKGROUND

Pending before the Court is Plaintiff's motion to remand. (Doc. 20, 21, 42, 44, 45, 46). Specifically, Plaintiff argues that remand is proper as the complaint does not plead federal claims, that the state law claims do not arise under federal law, and that removal under the federal officer statute was not proper. Defendants oppose the motion. (Doc. 40, 43). Based on the reasons delineated below, the Court grants the motion to remand.

On June 15, 2023, Plaintiff, an Illinois citizen, began this putative class action in the Circuit Court of Williamson County, Illinois, asserting Illinois state law claims against

Defendants Southern Illinois Healthcare Enterprises, Inc., Southern Illinois Hospital Services, and Southern Illinois Medical Services, NFP ("Defendants"), all of which are Illinois corporations. (Doc. 2-1). Plaintiff claims that Defendants installed automatic rerouting tools like Meta Pixel on their websites to transmit protected health information to third parties such as Facebook, thereby exploiting information for advertising purposes without the consent or knowledge of their patients.[1] Plaintiff seeks to represent the following class of individuals: "[a]ll Illinois citizens whose Private Information was disclosed by Defendants to third parties through the Meta Pixel and related technology without authorization." *Id.* at p. 29, ¶135. The complaint pleads state law claims for negligence (Count I), invasion of privacy (Count II), breach of implied contract (Count III), unjust enrichment (Count IV), breach of fiduciary duty (Count V), and violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILL. COMP. STAT. § 505-1, *et seq*. (Count VI, erroneously labelled count V). (Doc. 2-1).

On August 4, 2023, Defendants timely removed the case to this Court based on 28 U.S.C. §§ 1441 and 1442, arguing that Plaintiff's claims arise under federal law or that Defendants acted as a federal officer. (Doc. 2).

---

[1] A pixel is a snippet of code that tracks information about website visitors and their interactions. The pixel tracks pages viewed, buttons clicked, and information submitted through the site. (Doc. 2-1, ¶ 8).

## LEGAL STANDARDS

"Defendants may remove a 'civil action' from state court to the federal district court located in the place where such action is pending, as long as the federal district court had 'original jurisdiction' over the case." *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 968 (7th Cir. 2013) (quoting 28 U.S.C. § 1441(a)). Defendants, as the party seeking removal, bear the burden of establishing that federal jurisdiction exists. *See Doe v. Allied–Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993). There is a strong presumption in favor of remand, and district courts must narrowly interpret removal statutes. *Id.* Doubts over jurisdiction should be resolved in favor of remand. *Id.*

The Court is guided by the principle that federal courts are courts of limited jurisdiction, a function of the restrictions placed upon the federal judiciary both by the United States Constitution and by federal law. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). It is a fundamental principle of federalism that federal courts may hear only certain claims, such as those raising "federal questions" or "arising under" the laws of the United States. U.S. CONST. art. III § 2, cl. 1. While "[t]his constitutional grant of judicial authority is broad[,] . . . the Constitution gives Congress the power to further refine the actual scope of federal jurisdiction." *International Union of Operating Engineers, Local 150, AFL-CIO v. Ward*, 563 F.3d 276, 280 (7th Cir. 2009) (citing references and internal citations omitted). "Congress may not expand the jurisdiction of the federal courts beyond the bounds established by the Constitution," but it may impose

statutory limitations. *See Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 491 (1983). A defendant may not remove a case to federal court unless, at the time of removal, a plaintiff's complaint establishes that there is federal jurisdiction. *See Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 10 (1983). A federal court must remand a case to a state court if it lacks jurisdiction. *See, e.g.*, 28 U.S.C. § 1447(c) (stating that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

## DISCUSSION

**A.     Removal under 28 U.S.C. § 1441**

Plaintiff advances only state-law theories in the Complaint. (Doc. 2-1). Under the well-pleaded complaint rule, no federal question jurisdiction exists under 28 U.S.C. § 1331. *See Gunn v. Minton*, 568 U.S. 251, 257 (2013). Defendants, however, claim that there is federal question jurisdiction pursuant to the *Grable* test because the matter raises substantial and disputed federal issues. (Doc. 40, p. 9). "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258 (citing *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005). Defendants argue that Plaintiff's complaint raises a federal question under the Electronic Communications Privacy Act ("ECPA"), claiming that Plaintiff's allegations entirely "resonate in federal

law." (Doc. 40, p. 2-4). Defendants also argue that Plaintiff's claims require interpretation of federal provisions and are affirmatively premised on violations of federal law, as Defendants are covered entities under the Health Insurance Portability and Accountability Act ("HIPAA"). *Id.* at p. 5-8.

The Court finds that *Grable*'s requirements are not satisfied. When a state-law case uses regulatory standards as evidence of liability, "a federal regulatory scheme, itself lacking a private right of action," is insufficient to make the state-based claim a jurisdiction-triggering federal question. *Elkins v. Southeastern Indiana Health Management Inc.*, No. 1:23-cv-01117-JRS-TAB, 2023 WL 6567438, at *3 (S.D. Ind. Oct. 10, 2023) (citing *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 817 (1986)). In addition, neither the ECPA nor the HIPAA question is "necessarily raised" by Plaintiff's state law claims, as they all have alternative, non-federal grounds. A federal question is "necessarily" raised under § 1331 only when it is essential to resolving a state-law claim, meaning that "every legal theory supporting the claim requires the resolution of a federal issue." *Burrell v. Bayer Corporation*, 918 F.3d 372, 383 (4th Cir. 2019) (quoting *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004). *See also Roberts v. Smith & Wesson Brands, Inc.*, Lead Case No. 22-cv-6169, 2023 WL 6213654, at *15 (N.D. Ill. Sept. 25, 2023) (noting that "when a claim has multiple theories, all of the theories must present embedded issues of federal law to satisfy *Grable*[]" and arise under federal law.), *aff'd*, 98 F.4th 810 (7th Cir. 2024). For example, a jury could find that the installation of automatic rerouting tools breached an

implied contract of data privacy without applying the ECPA or considering the standards of patient health data as defined in HIPAA. As a result, the *Grable* test is not satisfied, and there is no federal question jurisdiction under 28 U.S.C. § 1331.

**B.     Federal Officer Removal under 28 U.S.C. § 1442**

The Court next addresses whether Defendants can remove the case to federal court based on the statute regarding federal officers or agencies being sued or prosecuted.

Defendants argue that the case was properly removed to federal court pursuant to the Federal Officer Removal Statute under 28 U.S.C. § 1442(a)(1). (Doc. 40). Federal officer removal is appropriate when "the defendant (1) is a person within the meaning of the statute, (2) is acting under the United States, its agencies, or its officers, (3) is acting under color of federal authority, and (4) has a colorable federal defense." *Betzner v. Boeing Company*, 910 F.3d 1010, 1015 (7th Cir. 2018). Defendants bear the burden of establishing federal jurisdiction by satisfying all four requirements. *See Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350, 352 (7th Cir. 2017).

To qualify as "acting under" a federal "officer" or "agency," the private person or company must be subordinated "to one holding a superior position or office." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 151 (2007). Such a relationship typically involves "subjection, guidance, or control" from the federal superior. *Id.* Thus, the private person's or company's actions "must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Id.* at 152. Mere compliance with federal laws,

rules, or regulations does not by itself fall within the scope of "acting under" a federal official, "even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Id.* at 152-153. However, private contractors act under the federal government if they "help[] the government produce an item that it needs[,]" thus providing assistance that "goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks." *Id.* at 153. Such companies "performed a job that, in the absence of a contract with a private firm, the Government itself would have had to perform." *Id.* at 154.

Plaintiff maintains that the action should be remanded because Defendants are not federal officers within the meaning of § 1442(a)(1), which "requires more than voluntary participation in a federal incentives program." (Doc 21, p. 14). In addition, Plaintiff contends that Defendants were not acting under a federal officer's authority when it installed the Facebook Meta Pixel tool on its websites, so their actions do not meet the standard for federal officer removal. *Id.* p 13-21. In response, Defendants claim they were "acting under" the federal government by implementing the Meaningful Use Program[2] ("Program") and receiving payment from the Department of Health & Human Services for such participation. (Doc. 40, p. 12-13). Defendants argue that their relationship with the government is "akin to a contractor as opposed to a mere regulator-regulated

---

[2] Other healthcare institutions have removed cases under 28 U.S.C. § 1442(a)(1) based on participation in the Meaningful Use Program. Many of these cases have been remanded and a few have been stayed in federal court.

relationship." *Id.* at p. 14. The government paid defendants to help develop the "nationwide infrastructure to allow for the electronic exchange of health care information," which is a task "the government otherwise would seek to do itself." *Id.* at p. 16.

The Seventh Circuit has applied *Watson* in several cases. In *Martin v. Petersen Health Operations, LLC*, for example, the defendant nursing home tried to remove under § 1442 on the grounds that it was "subject to extensive federal regulation" under the Medicare and Medicaid program. 37 F.4th 1210, 1212 (7th Cir. 2022). The Seventh Circuit acknowledged that the nursing home had to comply "with many federal requirements" but it held that "regulation does not turn a private entity into a public actor." *Id.* at 1213. Thus, the nursing home was not "acting under" the federal government for purposes of § 1442(a)(1) even if it was subject to extensive regulation and had to comply with those regulations to receive Medicare and Medicaid funds. *Id.*

On the other hand, the Seventh Circuit had found that some private actors were "acting under" federal officers. *See, e.g.*, *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181-82 (7th Cir. 2012) (holding that manufacturer acted under the federal government when it produced turbines for an aircraft carrier according to government specifications); *Betzner v. Boeing Co.*, 910 F.3d 1010, 1015 (7th Cir. 2018) (holding that manufacturer acted under federal officers when it contracted to manufacture heavy bomber aircraft for the United States Air Force); *Baker v. Atlantic Richfield Company*, 962 F.3d 937, 942-943 (7th Cir. 2020)

(holding that wartime manufacturer of raw materials for the government was acting under federal authority).

The Seventh Circuit has not ruled on the applicability of § 1442(a)(1) with respect to the specific facts of this case, but many courts around the country have. For example, the Third Circuit Court of Appeals held that the healthcare provider did not act under the federal government in creating and operating its patient portal to participate in the Program. *See Mohr v. Trustees of University of Pennsylvania*, 93 F.4th 100, 106 (3d Cir. 2024). The Third Circuit stated that it was joining "at least one of our sister circuits and many district courts that have addressed nearly identical issues." *Id.* Similarly, the Eighth Circuit recently stated that the patient portal was a private website instead of a federal government website and the design of it "is not—and has never been—a basic *governmental* task[,]" thus the healthcare provider was not "acting under" the federal government. *Doe v. BJC Health System*, 89 F.4th 1037, 1045 (8th Cir. 2023). Further, the Southern District of Indiana District Court held that a hospital was not acting under the federal government while creating and hosting patient portals, because the maintenance of electronic health records was not a "basic governmental task." *Elkins*, 2023 WL 6567438, at *2. *See also Lamarr v. Goshen Health System, Inc.*, No. 1:23-cv-01173-JRS-MJD, 2023 WL 6690582, at *2 (S.D. Ind. Oct. 12, 2023) (noting that patient portals were not something the government needed.).

Defendants are clearly more like the regulated nursing home seeking reimbursement in *Martin* than the military contractors in *Ruppel*, *Betzner*, and *Baker*. The military contractors in those cases were helping to accomplish an end only the federal government could accomplish, *i.e.*, conducting a war and/or providing equipment for the military for use in defense of the country. This is quite dissimilar to the establishment of a portal to allow for the exchange of health information, which is only one of many goals that the federal government tries to achieve by conditioning payment on compliance with various regulations. Critical to this distinction is that military contractors lose their private party status when they must adhere to precise design and development specifications for the manufacturing of military equipment. Here, on the other hand, the Defendants do not lose their private and independent party status by merely complying with regulations established by the Federal government. Simply put, Defendants' mere compliance with the Program for incentive payments and the provision of assistance to further a broad goal of the federal government are not enough to satisfy the "acting under" requirement for federal officer removal.

Defendants cite to two district court cases from the Third Circuit and the Sixth Circuit, arguing that the health care providers "assist the federal government in building a nationwide network of interoperable health information technology" and thus were acting under the federal government by participating in the Program. *See Doe I v. UPMC*, 2:20-cv-359, 2020 WL 4381675 (W.D. Pa. July 31, 2020); *Doe v. ProMedica Health System,*

*Inc.*, Case No. 3:20 CV 1581, 2020 WL 7705627 (N.D. Ohio Oct. 30, 2020). However, these two cases are the exception amongst the many district court cases to have decided the issue. Moreover, the Third Circuit this year overruled *Doe I* when it rejected the district court's holding that the defendant "operating its patient portal and receiving payments under the Program[]" was more "like a government contractor." *Mohr*, 93 F.4th at 106. *Doe I* and *ProMedica Health* adopted an "overly broad interpretation of what it means to assist a federal superior with its tasks or duties," failing to explain why building websites and patient portals is a basic governmental function, "which would permit removal to federal court in circumstances far beyond anything Congress intended." *Doe v. Gundersen Lutheran Health System, Inc.*, 23-cv-694-wmc, 2024 WL 489327, at *4 (W.D. Wisc. Feb. 8, 2024). After these decisions were issued in 2020, "'the tide has turned decidedly in the other direction,' and most cases have now concluded that there is no basis for federal officer removal under these facts." *Doe v. Sarah Bush Lincoln Health Center*, Case No. 23-CV-2170, 2023 WL 7690179, at *4 (C.D. Ill. Nov. 13, 2023). Although there is no binding Supreme Court or Seventh Circuit precedent on this precise issue, the Court chooses to follow the Third and Eighth Circuits and the majority of the district courts to have considered the matter, as those cases are better reasoned and more persuasive.

Thus, Defendants were not "acting under" the federal government under 28 U.S.C. § 1442(a)(1), and federal officer removal is not appropriate. The Court need not address the other elements of the statutory test.

### C. Attorney Fees

The Court has the authority to award Plaintiff attorney's fees pursuant to 28 U.S.C. § 1447(c) for prevailing on the Motion to Remand, but "such an award is only appropriate where 'clearly established law' demonstrates there was no basis for removal." *Lamarr*, 2023 WL 6690582, at *3 (citing *Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007)). As in *Lamarr*, the Court found that Defendants' federal officer argument, while ultimately unsuccessful, was at least colorable considering the Seventh Circuit's military-contractor cases. *See Lamarr*, 2023 WL 6690582, at *3. The Court agrees with *Lamarr*, and thus, the Court declines to award attorney's fees in this matter.

### CONCLUSION

Accordingly, the Court **GRANTS** the motion to remand. (Doc. 20). Because this Court lacks subject matter jurisdiction, the Court, pursuant to 28 U.S.C. § 1447(c), **REMANDS** this matter to the Circuit Court of Williamson County, Illinois. Further, the Court **DENIES as moot** Defendants' motion to strike Plaintiff's memorandum in support of motion to remand. (Doc. 39). No fees or costs are awarded. The Clerk of the Court is directed to close the case.

**IT IS SO ORDERED**.

**DATED: September 19, 2024.**

Digitally signed by Judge Sison
Date: 2024.09.19 11:29:15 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**